UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE MOORE,<br><br>　　　　　　　Defendant. | Case No. 14-cr-00212-WHO-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |

　　　　Defendant George Moore, who is scheduled to be transferred to a residential re-entry center on January 16, 2021, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because he is of heightened risk of COVID-19 infection as a result of the conditions of his incarceration and his obesity, hypertension, and hyperlipidemia. He has been incarcerated since June 3, 2014, and is serving a 100-month sentence.

　　　　I may grant Moore's motion only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The government concedes that Moore is in the high-risk category for COVID-19 infection, but argues that he is a danger to the community and that consideration of the Section 3553(a) factors would urge against granting the motion. I find that Moore meets the high standard for compassionate release, that he has a viable release plan, and that his release will not create a danger to the public. I GRANT his motion.

　　　　The phrase "extraordinary and compelling reasons" has been defined by the United States Sentencing Commission in the application notes to U.S.S.G. § 1B1.13. There are five circumstances that qualify as "extraordinary and compelling reasons" to grant compassionate release.

The first two relate to the defendant's medical condition. The "extraordinary and compelling reasons" standard is satisfied if "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). It is also satisfied by "a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. § 1B1.13 cmt. n.1(A)(ii). The defendant's age qualifies as a third extraordinary and compelling reason if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id*. § 1B1.13 cmt. n.1(B). Family circumstances requiring the defendant to care for minor children or a spouse or registered partner are a fourth qualifying reason. *Id*. § 1B1.13 cmt. n.1(C). Fifth, a catch-all, provides for relief if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. § 1B1.13 cmt. n.1(D).

Moore is obese, which elevates his risk of becoming seriously ill from COVID-19. The government does not dispute that the combination of Moore's chronic medical condition and the risk of contracting COVID-19 at FMC Fort Worth, particularly at this time when COVID-19 infections are increasing dramatically throughout the country, may constitute an extraordinary and compelling reason to grant this motion.

Next, I must determine whether Moore is a danger to others. The government argues that he is, reminding me that Moore has a criminal history dating back to age 13. His most recent federal convictions include possessing half a kilo of powder cocaine, almost a kilo of cocaine base, and a loaded firearm. His many priors and parole or supervised release violations include possession of controlled substances, transportation/sale of narcotics, and felon in possession of a firearm. He is now incarcerated at a medium security facility.

The government also notes that he has had three disciplinary incidents while incarcerated.

1    One was for kissing a female visitor in 2015.  Another was for having 2,280 postage stamps (well
2    above the 40 stamps an inmate is allowed) in 2020.  And the third was an incident that has been
3    expunged from his disciplinary record for failure of proof, where Moore received a letter with a
4    card containing ten suspected Buprenorphine sublingual film strips, a Schedule III Controlled
5    Substance.  The government indicates that at the time of the expungement the Regional Director of
6    the BOP did not have information that the government has described in the briefing on this
7    motion.  There is no evidence whether the Warden sought a rehearing with the Regional Director
8    to provide that information, and the record of the incident remains expunged.

9        Stacked against the government's concerns is that if I deny the motion, Moore will still be
10   released to a Residential Reentry Center (RRC) on January 16, 2021, with supervised release to
11   begin July 3, 2021.  Moore's release plan is to live with his wife and children, take care of his
12   children while his wife continues her work as a nurse, and find gainful employment, hopefully as a
13   welder.  This is a good plan and accelerates Moore's ability to reintegrate himself into society in a
14   law-abiding way.  He has been incarcerated for 77 months and has obtained a GED, completed the
15   Residential Drug Abuse Treatment Program and a job training program for welding, and has taken
16   dozens of other classes.  While I agree that the facts described by the government regarding the
17   third disciplinary incident are concerning, assuming their accuracy, the infraction was expunged
18   by the Bureau of Prisons.  Regardless, on the record before me, I do not conclude that Moore is a
19   danger to others if released now.

20       My analysis of Moore's motion comes down to consideration of the 18 U.S.C. § 3553(a)
21   sentencing factors.  When I sentenced Moore in 2014, I accepted a "C" plea into which the
22   government and Moore had entered for a sentence of 100 months, well below the Guideline range
23   of 130-162 months.  I noted the tough circumstances Moore had growing up, his addiction issues,
24   his strong relationship with his family, and the letters that described a "kind, caring human being"
25   and a "decent person at the core."  I recognized his desire for substance abuse treatment and
26   vocational training, both of which he has taken advantage of while in prison.  Nothing in my
27   thinking about Moore then is inconsistent with granting release now.  He has the support of his
28   wife and community.  His children want him home.  He has every incentive to follow the

United States District Court
Northern District of California

1 conditions of his release, find a job, and live productively.

2     The purposes of sentencing are better served by Moore's release to live with his family and seek gainful employment between now and July 3, 2021, than staying at FMC Fort Worth in the midst of this COVID-19 pandemic with spiking levels of contraction and then moving in mid-January to a RRC for less than six months. The time he has spent incarcerated has reflected the seriousness of his crime, promoted respect for the law, and provided just punishment. Release now does not undermine those principles and will promote rehabilitation.

    Moore's motion is GRANTED with the following conditions:

1. There being a verified residence and an appropriate release plan in place, this Order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. In this regard, it is the Court's preference that the defendant be flown to this District if appropriate arrangements are made, but I leave it to the Bureau of Prisons to determine how best to return the defendant to this District. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

2. Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of supervised release through and including July 3, 2021. The defendant's previously imposed conditions of supervised release are modified to include the following:

    a. Until January 16, 2021, defendant shall be on location monitoring-home incarceration. He must participate in the Location Monitoring Program as directed by the probation officer and be monitored, at the discretion of the probation office, by Radio Frequency, GPS or Voice ID. Location monitoring shall be utilized to verify his compliance with home incarceration while on the program. Defendant is restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by

1  the Court. Location Monitoring fees are waived for this portion of supervised
2  release.
3     b. Between January 16, 2021 and July 3, 2021, defendant shall be on location
4  monitoring-home detention. He must participate in the Location Monitoring
5  Program as directed by the probation officer and be monitored, at the discretion
6  of the probation office, by Radio Frequency, GPS or Voice ID. Location
7  monitoring shall be utilized to verify his compliance with home detention while
8  on the program. He is restricted to his residence at all times except for
9  employment, education, religious services, medical appointments, substance
10 abuse or mental health treatment, attorney visits, court appearances, court-
11 ordered obligations, or other activities pre-approved by the probation officer.
12 He must pay all or part of the costs of the program based upon his ability to
13 pay, if any, as determined by the probation officer.
14    c. To the extent that the probation officer allows defendant to communicate with
15 his father pursuant to Standard Condition No. 9 of defendant's terms of
16 supervised release during the "special term" of supervised release, said
17 communications should occur in the presence of defendant's wife, children, or
18 the probation officer.
19    d. Unless as specifically modified above, all terms of supervised release imposed
20 by the Judgment in this matter (Dkt. No. 21) remain in full force and effect
21 throughout the entire term of his supervision.

**IT IS SO ORDERED.**

Dated: November 20, 2020

William H. Orrick
United States District Judge